IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TRUSTMARK NATIONAL BANK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 09-0751-WS-M |
| | ) |
| **HAROLD ELTON KENNEDY,** | ) |
| | ) |
| Defendant. | ) |

### SHOW CAUSE ORDER

This matter comes before the Court *sua sponte*.

On November 20, 2009, plaintiff, Trustmark National Bank, filed an Amended Application for Temporary Restraining Order and Motion to Set Hearing on Preliminary Injunction (doc. 11). Antecedent to reaching any of the issues presented in the Application and Motion, the Court is obliged to examine a possible jurisdictional defect in this action. In light of its narrowly circumscribed jurisdiction, this Court bears an affirmative duty to inquire *sua sponte* whenever it appears that subject matter jurisdiction may be lacking. *See Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) ("Federal courts are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking.") (citation and internal quotation marks omitted).[1] If federal subject matter jurisdiction does not exist, then this Court is powerless to proceed further and must immediately dismiss the Complaint without reaching any of the Rule 65 issues raised by plaintiff. *See, e.g., Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (when subject matter jurisdiction is deemed lacking, "the court's sole remaining act is to dismiss the case for lack of jurisdiction"); *University of South Alabama v. American*

---

[1] *See also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (noting that "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"); *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ( "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.").

*Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue").

In its Complaint (doc. 1) filed on November 16, 2009, Trustmark alleged that defendant, Harold Elton Kennedy, sent it a series of lengthy, rambling, and often incoherent correspondence beginning in late July 2009.[2] Although the meaning of these writings is difficult to ascertain, it appears that Kennedy was objecting to Trustmark's foreclosure of the property of a person named Keith M. Kennedy (who is evidently defendant's nephew) in August 2009.[3] In particular, defendant contended that Trustmark should have accepted a "lawful bonded promissory note" that defendant had allegedly mailed unilaterally to Trustmark for Keith Kennedy's mortgage debt. It appears that defendant's position is that Trustmark was legally obligated to accept defendant's unsolicited promise to pay, to the exclusion of exercising its contractual remedy of foreclosing on Keith Kennedy's property. Eventually, defendant began sending "Notices of Default" to Trustmark, in which he demanded payment in the amount of "Sum Certain Per Agreement: USD $ 30,870,000,000.00" pursuant to, in his words, "Libellees failure to respond or rebut the INTERNATIONAL COMMERCIAL CLAIM ab initio ADMINISTRATIVE REMEDY." (Doc. 1, Exh. 7.) After several such demands, on October 21, 2009, defendant sent Trustmark a document styled "Notice of Final Determination and Judgement in Nihil Decit" stating that "Collection of this lawful claim, against your bonds, insurance policies, 801-k, CAFR funds, properties, or any other source of revenue to cure your dishonor in the public will begin in three business days if this claim is not paid in full." (Doc. 1, Exh. 17.)

Based on these factual allegations, Trustmark asserted the following causes of action against Kennedy: (1) a claim for injunctive relief based on interference with Trustmark's right to

---

[2]   By way of example, one such document is styled "Administrative Affidavit of Specific Negative Averment, Opportunity to Cure and Counterclaim" and refers to "an administrative procedure, within the admiralty," while also making statements such as "We the People were made private bankers according to the law with the authority to issue notes to discharge lawful debts." (Doc. 1, Exh. 4.)

[3]   Keith Kennedy was not a participant in defendant's correspondence to Trustmark, and there is no indication and no reason to believe that defendant had any legal interest whatsoever in the foreclosed property. Keith Kennedy is not a named party to this lawsuit.

conduct lawful business, and (2) a claim for declaratory judgment.  Simply put, Trustmark seeks an injunction from this District Court forbidding Kennedy from sending it any more harassing letters and notices or from engaging in any further harassing acts, and a declaration that Kennedy's asserted claims against Trustmark are "frivolous, null and void."  (Complaint, ¶ 8.)

Trustmark brought this action under the authority of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*; however, that purely procedural statute does not give rise to federal subject matter jurisdiction.  Indeed, "it is well established that the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts." *Stuart Weitzman, LLC v. Microcomputer Resources, Inc.*, 542 F.3d 859, 861-62 (11th Cir. 2008); *see also Federal Election Com'n v. Reform Party of U.S.*, 479 F.3d 1302, 1307 n.5 (11th Cir. 2007) (explaining that "a suit brought under the Act must state some independent source of jurisdiction").  In recognition of this principle, Trustmark invoked diversity of citizenship pursuant to 28 U.S.C. § 1332, on the grounds that Trustmark and Kennedy are citizens of different states (Mississippi and Alabama, respectively) and "[t]he amount in controversy exceeds $75,000.00 exclusive of interest, costs and attorneys fees."  (Complaint, ¶ 9.)  The jurisdictional concern that must be examined at this time concerns Trustmark's unexplained contention that the amount in controversy exceeds the sum or value of $75,000.

"When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citation omitted).  "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Morrison*, 228 F.3d at 1268 (citation omitted).

Surely, Trustmark does not maintain that the value of the benefits it will receive if Kennedy is enjoined from harassing communications and conduct exceeds $75,000.  It is extraordinarily hard to believe that the monetary value to a large financial institution of the cessation of what amounts to occasional annoying letters from a disgruntled relative of a former customer could come anywhere close to the jurisdictional minimum.  In that event, Trustmark would appear to hinge its amount in controversy allegations on the value of the contemplated declaratory relief.  But the mere fact that Kennedy has demanded more than $30 billion from

Trustmark does not necessarily imply that such is the *bona fide* amount in dispute.  Nothing in Kennedy's letters reveals any colorable legal or factual basis on which he could reasonably demand any funds from Trustmark, much less the $30 billion figure recited in the correspondence.  That Kennedy may be unhappy with Trustmark's decision to foreclose on the property of his nephew would not appear to confer standing on Kennedy to recover damages from Trustmark under any circumstances.  As such, the Court is at a loss to understand how the monetary value to Trustmark of the requested declaration that Kennedy's claims are null and void could exceed a *de minimis* sum.

In raising this jurisdictional concern, the Court recognizes that Trustmark's bare statement in the Complaint that the amount in controversy exceeds $75,000 is entitled to deference.  The Court also is well aware of the applicability of the "legal certainty test," pursuant to which a diversity complaint that expressly demands recovery in excess of $75,000 "should not be dismissed unless it is apparent, to a legal certainty, that the plaintiff cannot recover the requisite amount in controversy."  *Morrison*, 228 F.3d at 1268 (citation and internal punctuation omitted); *see also Lister v. Commissioners Court, Navarro County*, 566 F.2d 490, 492 (5th Cir. 1978) ("An allegation in the complaint of the requisite amount will normally suffice to confer jurisdiction ... if the claim is made in good faith and unless it appears to a legal certainty that the claim cannot be satisfied.").  However, the Eleventh Circuit has emphasized that the deference owed to a diversity plaintiff's amount in controversy allegations "does not eviscerate the court's obligation to scrupulously enforce its jurisdictional limitations," and that "a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury."  *Morrison*, 228 F.3d at 1272 (citations omitted); *see also Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp.2d 557, 570 (D.N.J. 2000) ("A court does not take into account wholly insubstantial and frivolous claims in calculating the amount in controversy.") (citation and internal quotation marks omitted).

Given the appearance that Kennedy's contemplated claims are wholly insubstantial in nature and that Trustmark's injuries from receiving Kennedy's correspondence do not approach the jurisdictional threshold, the Court harbors significant doubts about the existence of federal jurisdiction in this case.  Accordingly, Trustmark is **ordered**, on or before **November 27, 2009**, to **show cause** why this action should not be dismissed for want of subject matter jurisdiction.

The Court is particularly interested in any legal authorities that Trustmark may have to support the proposition that the types of harms identified in the Complaint are sufficient to trigger § 1332 jurisdiction.  If review of Trustmark's response reveals that federal jurisdiction does in fact exist, the Court will then promptly take up Trustmark's application for temporary restraining order.

      Because defendant has not yet appeared in this action, the Clerk's Office is **directed** to mail a copy of this Order to him at the following address: Harold Elton Kennedy, 5444 East Perdido Avenue, Orange Beach, Alabama 36561.

      DONE and ORDERED this 23rd day of November, 2009.

                                          s/ WILLIAM H. STEELE
                                          UNITED STATES DISTRICT JUDGE